#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CBI INVESTORS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHICAGO TITLE INSURANCE COMPANY, )<br>)<br>Defendant. )<br>_____) | CIVIL ACTION<br><br>No. 24-1215-KHV |

#### MEMORANDUM AND ORDER

On October 16, 2024, in the District Court of Montgomery County, Kansas, CBI Investors, Inc. filed suit against Chicago Title Insurance Company, asserting a breach of contract claim under Kansas law. On November 25, 2024, defendant removed the case to federal court based on diversity jurisdiction. See Notice Of Removal (Doc. #1). This matter is before the Court on Defendant Chicago Title Insurance Company's Motion To Dismiss (Doc. #16) filed December 16, 2024. For reasons stated below, the Court overrules defendant's motion.

#### Legal Standard

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See

id. Plaintiff bears the burden of framing its claims with enough factual matter to suggest that it is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

## Factual Background

### I. Documents Outside Of The Pleadings

The Court first addresses the 17 exhibits which defendant submits to the Court for consideration on its motion to dismiss. On a motion to dismiss under Rule 12(b)(6), the Court does not weigh potential evidence that the parties may present at trial. Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir. 2017). Thus, as a general rule, when a party presents matters outside of the pleadings for consideration, "the court must either exclude the material or treat the motion as one for summary judgment." Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004). The Court may, however, consider documents which defendant

attaches to its motion if (1) the complaint references the document; (2) the document is central to plaintiff's claim; and (3) no party disputes the authenticity of the document.  Brokers' Choice of Am., 861 F.3d at 1103.  The Court may also consider documents of which it can take judicial notice.  Banker v. Gold Res. Corp. (In re Gold Res. Corp. Sec. Litig.), 776 F.3d 1103, 1108 (10th Cir. 2015).  The Court may take judicial notice of its own files and records, as well as matters of public record.  St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Co., 605 F.2d 1169, 1172 (10th Cir. 1979) (federal courts may take notice of proceedings in other courts if proceedings have direct relation to matters at issue in current case); Winzler v. Toyota Motor Sales U.S.A., Inc., 681 F.3d 1208, 1213 (10th Cir. 2012) (judicial notice of administrative agency's publicly available files).  Even so, "[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein."  Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Here, neither party requests that the Court converts defendant's motion to dismiss into a motion for summary judgment and the Court declines to do so.  Accordingly, the Court must determine whether it can consider defendant's exhibits.  Defendant attaches the following 17 exhibits to its motion to dismiss and its reply brief:

(1) Title Insurance Policy;

(2) Quitclaim Deed;

(3) Estoppel Agreement;

(4) Motion for Conditional Approval of Sale by Creditor;

(5) Order Granting Trustee's Motion for Conditional Approval of Sale by Creditor;

(6) Special Warranty Deed;

(7) Release of Mortgage;

(8) Community State Bank's Claim Letter;

  (9)  Motion for Intended Compromise;

  (10)  Order Granting Trustee's Motion for Intended Compromise;

  (11)  Proof of Claim;

  (12)  Chapter 7 Trustee's Final Account and Distribution Report;

  (13)  Chicago Title Insurance Company's Claim Denial Letter;

  (14)  Formation of Domestic For-Profit Corporation;

  (15)  State of Kansas Certificate of Merger;

  (16)  Letter Acknowledging Receipt of Claim; and

  (17)  Letter Requesting Update on Claim.

  A.  <u>Documents Referenced In Plaintiff's Petition</u>

Plaintiff's petition references the title insurance policy, quitclaim deed, claim letter and claim denial letter. These documents are central to plaintiff's breach of contract claim and no party disputes their authenticity. Accordingly, the Court considers these documents. <u>See</u> <u>Brokers' Choice of Am.</u>, 861 F.3d at 1103.

As for the estoppel agreement, plaintiff never references this contract, and it is not a matter of which the Court can take judicial notice. For these reasons, the Court will not consider the estoppel agreement. <u>See id.</u> In addition, the Court will not consider the two letters which defendant attaches to its reply brief. Because defendant presents these letters with its reply, plaintiff has not had the opportunity to dispute their authenticity, and the Court will not consider those exhibits. <u>See id.</u> Any arguments based on these documents are for future motions for summary judgment.

  B.  <u>Documents Subject To Judicial Notice</u>

As noted, the Court may take judicial notice of its own records as well as records of other

courts, particularly in closely related cases. Accordingly, the Court takes judicial notice of the motion for conditional approval of sale by creditor, the order granting the trustee's motion for conditional approval of sale by creditor, the motion for intended compromise, the order granting the trustee's motion for intended compromise, the proof of claim and the trustee's final account and distribution report. See St. Louis Baptist Temple, 605 F.2d at 1172. The Court also takes judicial notice of the special warranty deed and release of mortgage, which are public documents recorded with the Register of Deeds in Montgomery County, Kansas. See Winzler, 681 F.3d at 1213. The Court emphasizes that in taking judicial notice of these documents, it does so to show their contents, not to prove the truth of matters asserted within.

As for the remaining two exhibits to defendant's motion to dismiss, the formation of domestic for-profit corporation and State of Kansas certificate of merger are not relevant to the matters presently before the Court. Accordingly, the Court declines to take judicial notice of these documents.

**II.     Factual Allegations**

Now, the Court draws the following facts from the allegations in plaintiff's petition and the following exhibits: the title insurance policy, quitclaim deed, claim letter, claim denial letter, motion for conditional approval of sale by creditor, order granting the trustee's motion for conditional approval of sale by creditor, motion for intended compromise, order granting the trustee's motion for intended compromise, proof of claim, the trustee's final account and distribution report, special warranty deed and release of mortgage.

    A.     The Title Policy

Plaintiff is an assignee of Community State Bank, a Kansas corporation. On December 28, 2018, Community State Bank made a commercial loan in the principal amount of $2,271,000 to

James C. Hiner, Jr. and Debra L. Hiner (husband and wife) and Edward L. Hiner and Theresa Hiner (husband and wife). The loan was secured by a mortgage dated December 28, 2018 on real estate located at 3420 CR 2700, Independence, Kansas 67301.[1] On December 12, 2018, defendant issued a commitment for title insurance to Community State Bank. On February 1, 2019, defendant issued a title insurance policy to Community State Bank and its successors and/or assigns, insuring title in the full amount of $2,271,000.[2] That same day, February 1, 2019, Community State Bank recorded the mortgage with the Montgomery County Register of Deeds.

The title policy provided coverage for (1) a defect in title caused by a document affecting title not being properly executed, witnessed, sealed, acknowledged, notarized or delivered and (2) a mortgage that was invalid or unenforceable because it was not properly created, executed, witnessed, sealed, acknowledged, notarized or delivered. Title Policy (Doc. #16-1) at 7, "Covered Risks," ¶¶ 2(a)(iii), 9(c). The title policy excluded coverage for defects, liens, encumbrances, adverse claims or other matters attaching or created after the policy date (February 1, 2019). Id. at 8, "Exclusions From Coverage," ¶ 3(d).

Under the policy conditions, defendant was not liable if Community State Bank voluntarily assumed liability for a loss by settling a claim or suit without defendant's prior consent. Id. at 11, "Conditions," ¶ 9(c). In addition, under Policy Condition 10(b), "[t]he voluntary satisfaction or release of the Insured Mortgage" terminated all liability of defendant "except as provided in Section 2 of these Conditions." Id. at 10, "Conditions," ¶ 10(b). Section 2 of the conditions stated

---

[1] Plaintiff does not allege who owned the real estate located at 3420 CR 2700, Independence, Kansas 67301.

[2] Plaintiff alleges that the title policy "insur[ed] the Mortgage." Petition (Doc. #1-1) filed November 25, 2024. The Court, however, understands the policy to insure the title. See Title Policy (Doc. #16-7).

that coverage under the title policy existed so long as Community State Bank (1) retained an interest or estate in the property; (2) held an obligation secured by a mortgage; or (3) retained liability based on warranties in any transfer or conveyance of title.  Id., ¶ 2.

James Hiner died on April 16, 2021.  After his death, the three remaining borrowers defaulted on the loan.  On January 31, 2022, the debtors executed a quitclaim deed conveying to Community State Bank the real estate covered by the mortgage and title policy.

B.     The Bankruptcy Proceedings

On April 20, 2022, Edward Hiner filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Kansas.[3]

On August 16, 2022, Community State Bank received a subpoena from the bankruptcy trustee requesting all bank records regarding the borrowers and related entities.  Community State Bank complied with the trustee's request and produced the relevant documents, including the mortgage.  Upon reviewing the mortgage, the trustee concluded that it was ineffective due to a clerical error by the notary public which rendered the mortgage null and void.[4]  As a result of the

---

[3]     Theresa Hiner, his wife, was not a party to the bankruptcy proceedings.

[4]     Edward Hiner conveyed the real estate to Community State Bank 78 days before he filed for bankruptcy, so the trustee was reviewing the mortgage to determine whether the conveyance constituted a preferential transfer that she could avoid under Section 547 of the United States Bankruptcy Code, 11 U.S.C. § 547.

Here, the mortgage was dated December 28, 2018 and Community State Bank recorded it on February 1, 2019.  The notary, however, purported to acknowledge the borrower's signatures on December 28, 2019—nearly a year later and after the notary's appointment had expired. Because of the patent defect, the trustee claimed that the debtors' transfer on January 31, 2022 was an avoidable preference under Section 547 of the United States Bankruptcy Code.  In the bankruptcy proceeding, Community State Bank argued that it had a perfected security interest in the land by virtue of its recorded mortgage and therefore it was a secured creditor.  The Trustee asserted that because the mortgage was defective based on the notary's error, the transfer was an avoidable preference under Section 547 of the United States Bankruptcy Code and therefore the real estate belonged to the bankruptcy estate.

error, Community State Bank became an unsecured creditor in the bankruptcy proceedings.

### 1.     Community State Bank's Sale Of The Property

On October 14, 2022, the trustee filed a motion asking the Court to conditionally allow Community State Bank to sell the real estate free and clear of liens, with such liens (if any) attaching to the proceeds of the sale to a third party.[5]  On October 26, 2022, the bankruptcy court granted the trustee's motion, stating that "The Property shall be sold in its present condition, AS IS, free and clear of all existing liens, encumbrances and mortgages of record, with no express or implied warranties of any kind."  Order Granting Trustee's Motion For Conditional Approval Of Sale By Creditor (Doc. #16-5) at 2 (capitalization in original).

On November 9, 2022, Community State Bank conveyed the real estate to Vestal Ranch Holdings, LLC by special warranty deed.  Pursuant to the deed, Community State Bank conveyed fee title to the real estate and covenanted "that the same are free, clear, discharged and unencumbered of and from all former and other grants, estates, taxes, assessments and encumbrances of what nature or kind whatsoever."  Special Warranty Deed (Doc. #16-6) at 1.  Community State Bank warranted the same "unto [Vestal Ranch Holdings], their heirs, successors and assigns, against the lawful claims of all persons claiming by, through or under [Community State Bank] but none other."  Id.  Community State Bank sold the property for $2,500,000.[6]  On January 9, 2023, Community State Bank recorded its release of mortgage.

On November 16, 2022, Community State Bank mailed a claim to defendant under the title

---

[5]     The motion represented that from the proceeds of the sale, by agreement, Community State Bank would pay $937,500 to the trustee to be held in trust and Community State Bank would hold the remainder ($1,562,500) in trust, pending resolution whether the property was part of the bankruptcy estate.  As to the truth of these representations, these statements are hearsay, and the Court does not consider them.  See Fed. R. Evid. 801.

[6]     While the Court assumes that the sale and conveyance occurred on the same day, it is unclear when the actual sale of the property occurred.

policy to recoup the loss it had incurred because of the purported notary error. At that time, Community State Bank calculated its potential loss to be over $200,000, but stated that it would not know the full extent until it filed a proof of claim to the property in the bankruptcy proceeding.

### 2. The Settlement

On December 6, 2022, the trustee filed a motion for intended compromise with Community State Bank, for the stated purpose of memorializing their good faith agreement to settle their dispute as to the real estate.[7] On December 28, 2022, the bankruptcy court granted the trustee's motion.

On September 23, 2023, Community State Bank received a payment of $669,529.23 on its unsecured claim to the real property. Community State Bank claims that because of the mortgage defect, it suffered a loss of $267,970.97 from the sale to Vestal Ranch Holdings. Community State Bank reasons that it received $1,562,500 plus $669,529.93 ($2,232,029.93) from the sale of the real estate, when the value was $2,500,000.[8]

Community State Bank made repeated requests to defendant for updates on the status of its claim, and defendant repeatedly advised that it was still reviewing the claim. After over a year of reviewing the claim, on April 29, 2024, defendant denied it. Defendant identified three policy conditions which barred Community State Bank's claims but clarified that it was not waiving its right to deny the claim under other grounds as well. First, defendant stated that under Policy

---

[7] The motion represented that the parties agreed that the trustee would (1) retain as a settlement payment the $937,500 from the sale of the real estate to Vestal Ranch Holdings and (2) release any claims that the bankruptcy estate may have against Community State Bank. It further stated to the judge that Community State Bank would keep all other proceeds from the sale—the remaining $1,562,500 from the $2,500,000 sale. Again, these representations are hearsay as to the terms of the alleged agreement, and the Court does not consider them.

[8] The value of the property minus what Community State Bank received totals $267,970.07. The Court assumes the 90 cent difference is a rounding or typographical error.

Condition 3, Community State Bank had an obligation to notify defendant when it became aware of a claim which adversely affected the mortgage. Because Community State Bank became aware of the notary error on September 1, 2022 and did not inform defendant until its claim letter on November 16, 2022, defendant claimed that it had no liability for coverage. Second, defendant claimed that under Policy Condition 6, Community State Bank had an obligation to cooperate with defendant in defending any claim. Defendant stated that on numerous occasions, it requested additional information regarding the bankruptcy proceedings and notary error, and that Community State Bank never provided the information. Because Community State Bank failed to do so, defendant claimed that it had no ability to defend the validity of the mortgage. Third, under Policy Condition 9(c), defendant asserted that because Community State Bank settled its claim with the trustee for $937,500 absent defendant's approval, it therefore voluntarily assumed any loss and defendant had no liability.

On October 16, 2024, as assignee of Community State Bank, plaintiff filed suit against defendant for breach of contract.[9] Plaintiff alleges that (1) pursuant to the title policy, defendant agreed to insure the title in the principal amount of the mortgage; (2) the title policy provided coverage for losses suffered as a result of a defective mortgage; (3) the mortgage was defective; (4) because of the defective mortgage and its status as a unsecured creditor, Community State Bank suffered a loss of $267,970.97 in the bankruptcy proceedings; and (5) defendant breached the title policy when it denied coverage for this loss. On December 16, 2024, defendant filed its motion to dismiss. See Motion To Dismiss (Doc. #16).

---

[9] Plaintiff does not allege when or how this assignment occurred. Nevertheless, defendant does not dispute that plaintiff is an assignee of Community State Bank.

**Analysis**

Under Rule 12(b)(6), defendant asks the Court to dismiss plaintiff's breach of contract claim for failure to state a claim.[10]  Defendant argues that pursuant to three separate conditions of coverage under the title policy, it is not liable for plaintiff's alleged loss.[11]  Specifically, defendant asserts that (1) under Policy Condition 9(c), Community State Bank voluntarily assumed the loss in the bankruptcy proceedings when it agreed to settle the trustee's claim for $937,500 without defendant's written consent; (2) under Policy Condition 2, as of November 9, 2022, Community State Bank no longer retained an interest or estate in the property, held an obligation secured by a mortgage or retained warranties by reason of a transfer or conveyance and therefore coverage under the policy terminated as of November 9; and (3) under Policy Condition 10(b), defendant is not liable for any loss because on January 9, 2023, Community State Bank voluntarily released the mortgage when it signed and recorded the release of mortgage.

Plaintiff responds that (1) defendant took 17 months to deny its claim, and its inaction amounted to waiver of the requirements in Policy Condition 9(c) and (2) because Community State Bank's claim existed at the time it conveyed the property to Vestal Ranch Holdings, Policy

---

[10] Initially, the Court notes defendant's non-compliance with the 15-page limitation for motions to dismiss. District of Kansas Local Rule 7.1(d)(3). On December 16, 2024, defendant filed an 11-page motion to dismiss which describes the factual and procedural background of this suit and identifies specific title policy provisions which allegedly require dismissal of plaintiff's breach of contract claim. That same day, defendant filed a 12-page memorandum in support which contains legal argument. In this memorandum, defendant incorporates by reference paragraphs 5 through 33 of its motion—approximately six pages of the factual background. Essentially, defendant filed two documents to circumvent the page limit, placing the facts in one document and the legal analysis in the other. Defendant neither sought nor received permission to do so. Because plaintiff has not objected, the Court accepts defendant's filings in this instance but cautions that the Court may summarily strike future filings which violate the Local Rules.

[11] Defendant's motion to dismiss is based on different theories of denial than the claim letter it sent to Community State Bank. In its motion to dismiss, defendant invokes Policy Conditions 2, 9(c) and 10(b), whereas its denial letter cited Policy Conditions 3, 6 and 9(c).

Conditions 2 and 10(b) do not apply.

Under Kansas law, plaintiff states a claim for breach of contract when it alleges (1) the existence of a contract agreement between the parties; (2) sufficient consideration to support the contract; (3) plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach; and (5) resulting damages. Stechschulte v. Jennings, 297 Kan. 2, 23, 298 P.3d 1083, 1098 (2013). The interpretation of an insurance policy, like other contracts, is a question of law. See AMCO Ins. Co. v. Beck, 261 Kan. 266, 269, 929 P.2d 162, 165 (1996). Unless the parties have expressed an intent to the contrary, the Court gives the terms in an insurance policy their plain and ordinary meaning. See Pink Cadillac Bar & Grill, Inc. v. U.S. Fid. & Guar. Co., 22 Kan. App. 2d 944, 948, 925 P.2d 452, 456 (1996). If the language of the policy is clear, the Court must enforce the policy according to its terms. See Am. Media, Inc. v. Home Indem. Co., 232 Kan. 737, 740, 658 P.2d 1015, 1019 (1983). Here, neither party asserts that the title policy is ambiguous.

In analyzing a coverage dispute, before turning to defendant's arguments, the Court begins with the threshold issue of whether plaintiff has alleged coverage for its claim. See Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co., 281 Kan. 844, 849, 137 P.3d 486, 490 (2006).

## I. Whether Plaintiff's Petition Alleges Coverage

Plaintiff alleges that the title policy provided coverage for (1) a defect in title caused by a document affecting title not being properly executed, witnessed, sealed, acknowledged, notarized or delivered and (2) a mortgage that was invalid or unenforceable because it was not properly created, executed, witnessed, sealed, acknowledged, notarized or delivered. Relating specifically to the title defect, plaintiff alleges that the mortgage was dated December 28, 2018, and Community State Bank recorded it on February 1, 2019. The notary purported to acknowledge

the borrowers' signatures on December 28, 2019, months after Community State Bank recorded the mortgage and after the notary's appointment had expired.  Because the title policy provides coverage for an improperly acknowledged or notarized mortgage, plaintiff's claim for coverage for a title defect falls squarely within the policy coverage.  Plaintiff has sufficiently alleged coverage under the policy, a breach due to defendant's failure to pay and resulting damages.  See Stechschulte, 297 Kan. at 23, 298 P.3d at 1098.  Based on these allegations, plaintiff's petition has plausibly alleged a claim for breach of contract under Kansas law.

## II.     Whether A Condition Of Coverage Precludes Plaintiff's Claim

Defendant argues that even if plaintiff has facially stated a claim for breach of contract, it has no liability for the alleged loss based on three conditions of coverage under the policy.  Defendant asserts that (1) under Policy Condition 9(c), Community State Bank voluntarily assumed the loss in the bankruptcy proceedings when it agreed to settle the trustee's claim for $937,500 without defendant's written consent; (2) as of November 9, 2022, Community State Bank no longer retained an interest or estate in the property, held an obligation secured by a mortgage or retained warranties by reason of a transfer or conveyance, and therefore coverage terminated under Policy Condition 2; and (3) under Policy Condition 10(b), defendant is not liable for any loss because on January 9, 2023, Community State Bank voluntarily released the mortgage when it signed and recorded the release of mortgage.

In support of its three arguments, defendant attaches to its motion—and the Court considers—the title insurance policy, quitclaim deed, claim letter, claim denial letter, motion for conditional approval of sale by creditor, order granting trustee's motion for conditional approval of sale by creditor, motion for intended compromise, order granting trustee's motion for intended compromise, proof of claim, trustee's final account and distribution report, special warranty deed

and release of mortgage.

A.     Policy Condition 9(c)

Defendant's obligation to provide coverage for covered risks is "SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE IN SCHEDULE B, AND THE CONDITIONS." Title Policy (Doc. #16-1) at 7 (capitalization in original). Policy Condition 9(c) states that defendant is not be liable for any loss if Community State Bank voluntarily assumed liability for the loss by settling a claim or suit without defendant's prior consent. Id. at 11, "Conditions," ¶ 9(c).

Defendant argues that because Community State Bank settled its claim with the trustee for $937,500 and defendant did not consent to this settlement, Community State Bank voluntarily assumed any liability for the resulting loss. As evidence of the alleged settlement, defendant attached the trustee's motion for intended compromise dated December 9, 2022. As noted above, however, the Court takes judicial notice of the filings in Edward Hiner's bankruptcy proceedings, but judicial notice does not prove the truth of the matters asserted therein, i.e. a settlement agreement between the trustee and Community State Bank or a settlement amount of $937,500. Moreover, even if the alleged settlement occurred, it is not clear how Community State Bank "voluntarily assumed" liability by entering into it. The Court therefore overrules defendant's motion to dismiss on this ground.

B.     Policy Condition 2

Policy Condition 2 provides a temporal limitation on coverage. The provision states that coverage continues only so long as (1) "the Insured retains an estate or interest in the land," (2) "holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured" or (3) "shall have liability by reason of warranties in any transfer or conveyance of the

Title." Title Policy (Doc. #16-1) at 9, ¶ 2.

Defendant argues that under Policy Condition 2, the Court should dismiss plaintiff's breach of contract claim because (1) on November 9, 2022, by special warranty deed, Community State Bank conveyed its fee title interest in the property to Vestal Ranch Holdings and covenanted "that the same are free, clear, discharged and unencumbered of and from all former and other grants, estates, taxes, assessments and encumbrances of what nature or kind whatsoever," Special Warranty Deed (Doc. #16-6) at 1; and (2) Community State Bank only provided warranties to Vestal Ranch Holdings for the period during which it owned the real estate—between January 31 and November 9, 2022—and the title policy excludes coverage for defects, liens, encumbrances adverse claims or other matters attaching or created after the policy date (February 1, 2019), Title Policy (Doc. #16-7) at 8, "Exclusions From Coverage," ¶ 3(d).   Defendant therefore maintains that at the latest, its obligation to provide coverage terminated when Community State Bank transferred the property by special warranty deed on November 9, 2022.  Plaintiff responds that the conveyance of title and release of mortgage did not terminate defendant's obligations as to its pre-existing claim for coverage.

The Court agrees with defendant that coverage effectively ended when Community State Bank transferred the property by special warranty deed on November 9, 2022.  The Fourth Circuit Court of Appeals held that the plain language of this title policy "evinces the intent of the parties to limit the scope of title protection to the period running from the effective date of the policy until the insured conveys away its interest in the land, unless, in the conveyance, the insured gives warranties to the grantee." [12]   Chicago Title Ins. Co. v. 100 Inv. Ltd. P'ship, 355 F.3d 759, 763

---

[12]   The Fourth Circuit applied general contract principles under Maryland law.  Id. "[C]ourts applying Maryland law to insurance contracts must, as with any other contract, ascertain
(continued. . .)

(4th Cir. 2004). Here, Community State Bank conveyed title to Vestal Ranch Holdings by special warranty deed, meaning that it conveyed no more than what it received from the three borrowers.[13] Moreover, it only provided warranties for the period during which it owned the real estate— between January 31 and November 9, 2022. The title policy excludes coverage for defects, liens, encumbrances adverse claims or other matters attaching or created after the policy date (February 1, 2019). Title Policy (Doc. #16-7) at 8, "Exclusions From Coverage," ¶ 3(d). Community State Bank's warranties therefore would not extend coverage beyond the date of November 9, 2022.

Nevertheless, Policy Condition 2 does not defeat coverage for losses which occurred during the policy period, before the termination of coverage. The policy insures against any "loss or damage . . . sustained or incurred by the Insured" during the policy period by reason of a title defect. Id. at 7–8, "Covered Risks." In 100 Investment, the Fourth Circuit held that because the title policy covered all losses or damages during the policy period, and plaintiff's loss occurred during the policy period, Chicago Title's obligations under the policy remained *even if coverage had terminated*. 100 Inv. Ltd. P'ship, 355 F.3d at 763 (emphasis added). While this circuit has not examined this exact issue, other courts have followed the Fourth Circuit example. See e.g., Sec. Title Guarantee Corp. of Baltimore v. 915 Decatur St NW, LLC, 427 F. Supp. 3d 1, 12

---

[12] (. . .continued)
and give effect to the intentions of the parties at the time of contracting." Id. (internal quotations omitted). Kansas law is identical. Under Kansas law, the cardinal rule of contract interpretation is that the Court must ascertain and give effect to the parties' intent. Waste Connections of Kan., Inc. v. Ritchie Corp., 296 Kan. 943, 963, 298 P.3d 250, 264 (2013).

[13] "Special warranty deed" is a legal term of art. A special warranty deed imposes liability on the grantor "to defend the title against only those claims and demands of the grantor and those claiming by and under the grantor." Black's Law Dictionary (10th ed. 2014). By contrast, with a general warranty deed, the grantor agrees to defend all claims against title. Id.

(D.D.C. 2019) (applying Fourth Circuit approach to coverage claims); M & I Marshall & Isley Bank v. Wright, No. CV-10-01657-FJM, 2011 WL 181292, at *3 (D. Ariz. Jan. 19, 2011) ("When the coverage period ends pursuant to Section 2(b) of the Conditions and Stipulations, coverage may still exist for damages sustained during the coverage period, even if a claim is submitted after the coverage period.").

Based on the language of the policy, the Court holds that even though Community State Bank's transfer terminated coverage under the policy on November 9, 2022, plaintiff may still recover for loss sustained during the coverage period. Defendant argues that the loss occurred after the policy period, when Community State Bank received payment of its unsecured claim from the bankruptcy estate on September 23, 2023 and could specifically calculate its loss. The Court disagrees. Community State Bank was damaged on the date of the notary error—December 28, 2018—and suffered this specific loss at the time of sale to Vestal Ranch Holdings. Plaintiff has plausibly alleged that it suffered loss during the policy period and that defendant had an obligation to provide coverage. The Court overrules defendant's motion to dismiss on this ground.

C.     Policy Condition 10(b)

Policy Condition 10(b) states that "The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability, of [defendant] except as provided in Section 2 of these Conditions." Id. at 10, "Conditions," ¶ 10(b). Defendant argues that the Court should dismiss plaintiff's claim because on November 9, 2022, by special warranty deed, Community State Bank conveyed its fee title interest in the property to Vestal Ranch Holdings and covenanted "that the same are free, clear, discharged and unencumbered of and from all former and other grants, estates, taxes, assessments and encumbrances of what nature or kind whatsoever." Special Warranty Deed (Doc. #16-6) at 1. In addition, Community State Bank signed the release of mortgage on January 4,

2023 and recorded it on January 9, 2023 in Montgomery County, Kansas. Defendant asserts that it has no liability for plaintiff's loss because Community State Bank voluntarily released the mortgage, which terminated defendant's coverage under the policy. Plaintiff again responds that the conveyance of title by special warranty deed and release of mortgage did not terminate defendant's obligation because it had a pre-existing claim for coverage under the policy, citing the Fourth Circuit opinion in Chicago Title Insurance Co. v. 100 Investment Ltd. Partnership, 355 F.3d 759 (4th Cir. 2004).

As the Court has already held, termination of coverage does not defeat plaintiff's claim, so long as Community State Bank suffered loss during the policy period. See 100 Inv. Ltd. P'ship, 355 F.3d at 763. The Fourth Circuit applied this rule to the language of Policy Condition 2—a continuation of coverage provision rather than a termination of liability provision such as Policy Condition 10(b). Despite the different purposes of the provisions, the Court sees no reason why the Fourth Circuit reasoning could not apply in equal force to other conditions enumerated in the title policy.

Moreover, Policy Condition 10(b) specifically provides for continuing coverage under Policy Condition 2, and the Court has already concluded that plaintiff has stated a claim for coverage under that provision because its loss occurred during the policy period. Plaintiff has plausibly alleged that it suffered loss during the policy period and that defendant had an obligation to provide coverage. For these reasons, the Court also overrules defendant's motion to dismiss on this ground.

**IT IS THEREFORE ORDERED** that Defendant Chicago Title Insurance Company's Motion To Dismiss (Doc. #16) filed December 16, 2024 is **OVERRULED**.

Dated this 19th day of March, 2025 at Kansas City, Kansas.

-19-

<u>s/ Kathryn H. Vratil</u>  
KATHRYN H. VRATIL  
United States District Judge